## THE TRANSFER No. 4.[1]

### BROOKLYN & N. Y. FERRY Co. *v.* THE TRANSFER No. 4.

(*District Court, E. D. New York.* December 8, 1890.)

COLLISION—STEAM VESSELS CROSSING—DUTY TO HOLD COURSE.
Where a tug, having the right of way over a ferry-boat on a crossing course, whistled to indicate that she would cross the bow of the ferry-boat, but immediately changed her wheel to swing away from the ferry-boat, and continued swinging until the vessels collided, it was *held* that the collision was the fault of the tug in not holding her course.

In Admiralty. Suit for damage by collision.
*Wilcox, Adams & Macklin*, for libelant.
*Page & Taft* and *R. D. Benedict*, for claimant.

[1]Reported by Edward G. Benedict, Esq., of the New York bar.

BENEDICT, J. This action is brought by the Brooklyn & New York Ferry Company, owners of the ferry-boat Alaska, to recover damages for injuries done to that ferry-boat by the tug Transfer No. 4, on the 10th of August, 1889. The collision occurred about 10:40 P. M. The night was clear moonlight, and the tide was strong ebb. The ferry-boat moved out from her bridge on the New York side blowing a long whistle as she moved. As soon as she reached the mouth of her slip, the Transfer No. 4 was disclosed moving up the river with a car-float on her starboard side. The ferry-boat blew two whistles, and kept her speed under a starboard helm. The tug put her helm a-port and reversed her engines. The result was that the tug came in contact with the starboard side of the ferry-boat 30 or 40 feet from her stern, doing the damage sued for. The testimony of the pilot of the tug makes a clear case of fault on the part of the tug. The vessels were on crossing courses involving risk of collision, and the ferry-boat had the tug upon her own starboard side. Under these circumstances, according to the contention of the tug, it was the duty of the ferry-boat to avoid the tug. But if this be so, it was also the duty of the tug to hold her course and permit the ferry-boat to choose whether to go astern or ahead of the tug. Instead of doing this the tug undertook to dictate to the ferry-boat. Her pilot testifies that when he saw the ferry-boat coming out he blew one whistle because, as he says, "I wanted to go ahead of him. I wanted him to stop," and instantly ported his helm; and although he received a signal of two whistles from the ferry-boat in reply to his one, he answered with a second signal of one whistle and kept porting, so that at the collision both vessels were heading towards Brooklyn. This evidence from the tug makes a case of fault on the part of the tug. I cannot find fault in the navigation of the ferry-boat. She, according to the contention of the tug, had the right to elect whether to go ahead of or astern of the tug. She determined to pass ahead of the tug, and the fact that the blow was made within 30 or 40 feet of her stern shows that if the tug had not changed her course the ferry-boat would have passed ahead of her in safety. The pilot of the ferry-boat says that he determined to go ahead of the tug, because he knew that any other course would result in collision, and I am not able to find upon the evidence that his conclusion was wrong. It is not, therefore, a case of choosing the most dangerous of two courses, but rather of choosing the least dangerous course, and one which, as the result proved, would have averted collision if the tug had not altered her course in the manner above stated. There must be a decree for libelant.